KRANJAC TRIPODI & PARTNERS LLP
Xavier M. Bailliard, Esq.
xbailliard@ktpllp.com
30 Wall Street, 12th Floor
New York, New York 10005
Tel: (646) 216-2400
Fax: (646) 216-2373

*Attorneys for Defendant*


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARMEN TAVAREZ-VARGAS, Individually, and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>vs.<br><br>ANNIE'S PUBLISHING, LLC,<br><br>          Defendant. | No. 1:21-cv-09862-AT |


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

## <u>TABLES OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ....................................................................................................3

LEGAL ARGUMENT............................................................................................................7

I.    PLAINTIFF'S CLAIMS ARE MOOT BECAUSE DEFENDANT HAS
      ENGAGED AUDIOEYE TO REMEDY ALL ALLEGED ADA VIOLATIONS ...........8

II.   PLAINTIFF LACKS STANDING TO BRING HER ADA CLAIM (COUNT 1) .........11

III.  PLAINTIFF ALSO LACKS STANDING TO BRING HER NYCHRL
      CLAIM BECAUSE SHE FAILS TO PROPERLY PLEAD AN INJURY
      IN FACT (COUNT II)..........................................................................................................17

IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR VARIOUS FORMS OF
      RELIEF UNDER THE NYCHRL ......................................................................................17

CONCLUSION......................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011)......................................................................................7, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................7, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................7, 8

*Campbell v. Greisberger*,
    80 F.3d 703 (2d Cir. 1996)..............................................................................................9

*Chauca v. Abraham*,
    89 N.E.3d 475 (N.Y. 20017).........................................................................................17

*Clear Channel Outdoor, Inc. v. City of New York*,
    594 F.3d 94 (2d Cir. 2010)........................................................................................9, 11

*Conley v. Gibson*,
    355 U.S. 41 (1957)....................................................................................................7, 8

*Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.A.R.L.*,
    790 F.3d 411 (2d Cir. 2015)......................................................................................5, 8

*Diaz v. Kroger Co.*,
    18-cv-7953, 2019 WL 2357531 (S.D.N.Y. Jun. 4, 2019).........................................8, 9, 10, 14

*EEOC v. Port Auth. of N.Y. & N.J.*,
    768 F.3d 247 (2d Cir. 2014)......................................................................................7, 8

*F.O. v. New York City Dept. of Educ.*,
    899 F. Supp. 2d 251 (S.D.N.Y. 2012)..............................................................................11

*Feltzin v. Stone Equities, LLC*,
    2018 WL 1115135 (E.D.N.Y. Feb. 8, 2018).......................................................................16

*Feltzin v. Triangle Props. #1, LLC*,
    2016 WL 11599264 (E.D.N.Y. Dec. 15, 2016) ...................................................................16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000).....................................................................................................9

*FW/PBS, Inc. v. Dallas*,
   493 U.S. 215 (1990) ....................................................................................................11

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013) .......................................................................................................9

*Guglielmo v. Nebraska Furniture Mart, Inc.*,
   2020 WL 7480619 (S.D.N.Y. Dec. 18, 2020) ............................................... *passim*

*Harty v. Nyack Motor Hotel, Inc.*,
   2020 WL 1140783 (S.D.N.Y. Mar. 9, 2020) ..........................................................16

*Hayden v. Paterson*,
   594 F.3d 150 (2d Cir. 2010) .....................................................................................7

*Jaquez v. Aqua Carpatica USA, Inc.*,
   2021 WL 3727094 (S.D.N.Y. Aug. 20, 2021) ...........................................13, 15, 16

*Kreisler v. Humane Soc'y of New York*,
   2018 WL 4778914 (S.D.N.Y. Oct. 3, 2018) ...........................................................17

*Mendez v. Apple, Inc.*,
   2019 WL 2611168 (S.D.N.Y. Mar. 28, 2019) .............................................. *passim*

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .........................................................................................8, 11

**Statutes**

42 U.S.C. § 12101, et seq. ................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 12(b)(1) ...........................................................................5, 7, 8, 13

Rule 12(b)(6) ............................................................................................................7

**Other Authorities**

N.Y.C. Admin. Code, tit. 8, Ch. 1, § 8-127(a) ....................................................17

Defendant Annie's Publishing, LLC ("Annie's Publishing" or "Defendant") respectfully submits this Memorandum of Law in support of its motion to dismiss Plaintiffs' Amended Class Action Complaint (the "Amended Complaint" or "Amend. Comp.") (ECF No. 19), pursuant to Federal Rule of Civil Procedure 12(b)(1).

## **INTRODUCTION**

This lawsuit is one of over a hundred of quasi-identical lawsuits Plaintiff has filed in this District alone alleging that various companies' websites violate the American with Disabilities Act (the "ADA") because they purportedly are not accessible to the visually impaired (which Plaintiff alleges she is). Evidently, Plaintiff decided to engage in a deliberate and systematic campaign to visit as many websites as possible in an effort to identify as many as she could come across that somehow, someway contained purported access barriers for the visually impaired, and then filed over one hundred separate complaints. This case is no different.

The allegations in Plaintiff's Amended Complaint can be summed up in one phrase: Plaintiff, who is visually-impaired, accessed Defendant's website in July 2021 and in April 2022 (during the pendency of this lawsuit) with the intent to purchase some unspecified "hook and needle kit" on Defendant's website, was somehow prevented from accessing certain portions of Defendant's website due to some alleged access barriers. Based on these vague allegations, Plaintiff asserts claims for (i) violation of the ADA, (ii) violation of the New York City Human Rights Law ("NYCHRL"), and (iii) injunctive relief requesting that Defendant modify its website to make it compliant with the guidelines. All three of these claims fail for two reasons.

First, after Defendant was served with Plaintiff's original Complaint, Defendant undertook and completed efforts to modify its website to make it ADA compliant. More, Defendant has submitted evidence concurrently with this motion that it will ensure continued compliance with

1

the current applicable guidelines and that it will ensure that it will continue to modify its website as needed to make it compliant with any guidelines that may be established in the future. As such, because the website is now ADA compliant, and thus is accessible to the blind and visually-impaired, Plaintiff's claims have been rendered moot. Because the claims are moot, the court does not have subject matter jurisdiction over Plaintiff's claims, and they must therefore be dismissed.

Second, even if the claims were not moot—and they are—Plaintiff's Amended Complaint sets forth only general conclusory allegations of how she was somehow prevented from accessing some parts of Defendant's website. For example, it alleges only that Plaintiff, on two days in July 2021 and April 2022, accessed the website to allegedly purchase some unspecified "hook and needle kit," but fails to allege (i) what specific product Plaintiff intended to buy or what specific information (other than pricing on some products) she intended to access on the website that she was prevented from accessing, (ii) how the alleged barriers prevented Plaintiff from accessing specific information on the website about the specific hook and needle kit she intended to purchase, or (iii) whether the access barriers she allegedly encountered actually make the website ADA non-compliant. These facts must be alleged to set forth an injury in fact, and Plaintiff alleges not one of them. As such, Plaintiff has failed to allege an injury in fact, and therefore lacks standing to bring forth her claims.

As such, Defendant respectfully asks the Court to dismiss all of Plaintiff's claims (i) because they are moot and (ii) for lack of standing because of her failure to plead a particularized injury. In the alternative, Defendant respectfully requests that the Court dismiss Plaintiff's claim for civil penalties and punitive damages under the NYCHRL.

## STATEMENT OF FACTS

Defendant operates a website, www.annieskitclubs.com (the "Website"), though which an online customer can purchase various craft kits "for quilting, jewelry making, knitting, sewing and crochet." *See* Amend. Compl. ¶¶ 2, 20.  Plaintiff is a visually-impaired individual who uses a screen reading software, the Non Visual Desktop Access ("NVDA") to access information located on websites. *See id.* ¶¶ 1, 16, 22.  For screen-reading software to function, the information on the website must be coded in such a way as to allow the screen reader to render the visual information on the website to be rendered into text. *See id.* ¶ 18.  W3C is an international website standards organization that publishes website accessibility guidelines for blind and visually-impaired users known as the Web Content Accessibility Guidelines ("WCAG"). *See id.* ¶ 19.  The most recent version of these guidelines is known as "WCAG 2.1." *Id.*

In her Amended Complaint, Plaintiff sets forth only two allegations regarding the purported times she visited Defendant's Website and for what purpose – which are inconsistent and both overly vague.

Plaintiff first alleges that "[o]n July 28, 2021 and April 4, 2022 [during the pendency of this lawsuit]", she "browsed and attempted to transact business" on Defendant's Website in order to "*inter alia*, purchase a hook and needle kit." *Id.* at ¶ 2.  Other than a vague reference to a "hook and needle kit" and the fact that the Website offers "various craft goods, including for crochet, knitting, quilting and jewelry making", it is left to one's imagination as to what actual product she intended to purchase, or what information she intended to access on the Website. *See id.*[1]

---

[1] In her original Complaint, Plaintiff made no mention of a hook and needle kit; but rather alleged only generally that she intended to "purchase products, goods and/or services" on Plaintiff's Website. *See* Complaint [ECF No. 1] ¶¶ 2, 22.

Then, later in the Amended Complaint, Plaintiff sets forth an even more vague and general allegation that during some unspecified "visits to Defendant's [W]ebsite, the first occurring in July 2021 through March 2022" (thus not on April 4, 2022 as previously alleged), "Plaintiff encountered multiple access barriers that denied Plaintiff full and equal access to the craft materials, including the [unspecified] hook and needle kits,  offered to (and made available for) the general public," which barriers prevented her from benefiting from the "full enjoyment of the goods and/or services offered on the website." *Id.* at ¶ 22.  That is it.  Aside from the fact that the allegations are inconsistent in terms of when Plaintiff actually accessed the Website, Plaintiff fails to allege what specific content she actually intended to browse or what product she actually intended to purchase (other than some vague reference to some "hook and needle kits".).  *See id.*

Plaintiff further alleges that when she attempted to "navigate" the Website, she "encountered multiple accessibility barriers," which impeded "Plaintiff's ability to navigate the website" and to "make an informed choice as to the craft materials available" on the Website and to make "an informed choice about the items to purchase."  *See id.* ¶ 23.  What those barriers actually are, what specific material information she intended to access but was unable to do so due to the barriers, how the barriers actually prevented Plaintiff from making a purchase on the Website, and what actual product (other than a vague reference to a hook and needle kit) she intended to purchase but could not is again left to the reader's imagination. *See id.*  Indeed, Plaintiff merely sets forth a list of general and vague examples of these purported "multiple barriers":

(a) The screen reader fails the accessibility menu, impeding Plaintiff's ability to navigate the website and make a purchase as a sighted New York customer would.

(b) The screen reader does not read the title function when a user chooses the particular craft they want to shop for, impeding Plaintiff's ability to make an informed choice as to the craft materials available.

(c) The screen reader does not read the price of various hook and needle kits, impeding Plaintiff's ability to make in informed choice about the items to purchase.

*See id.* ¶¶ 2, 23.

First, as a fundamental matter, Plaintiff fails to allege how, even if the barriers actually existed and caused her harm, that the existence of those barriers causes the Website to not conform to the WCAG 2.1 Guidelines (and thus is violative of the ADA).  *See id.*   Second, other than generally alleging that she was denied access to certain vague information on the Website (e.g. "title function" for some unidentified "particular product" and "the price of various hook and needle kits") and that she wanted to purchase an unspecified "hook and needle kit", Plaintiff does not allege what specific information she needed/attempted to access that prevented her from making a purchase of a specific product, why that information was necessary, or how it actually prevented her from making a purchase.  *See id.*

Based on these general and conclusory allegations, Plaintiff alleges that the Website violates Title III of the ADA and the NYCHRL because it does not meet WCAG 2.1 guidelines. *See id.* ¶¶ 4, 37-52; Count I and Count II.  In addition, Plaintiff seeks to certify a nationwide class, as well as a New York City subclasses, "of all visually-impaired or legally blind individuals . . . who have attempted to access Defendant's website and have been denied access to the equal enjoyment of goods and/or services offered on the website during the Class Period." *See id.* ¶¶ 29-36.

Finally, as set forth in the accompanying Declaration of Chuck Croft[2] ("Croft Decl."), Defendant has undertaken to remedy all of the alleged infirmities with the Website and has completed all necessary improvements to make the Website accessible and compliant with WCAG 2.1 guidelines.  Specifically Defendant engaged AudioEye, a digital accessibility software solution

---

[2] The Court may consider evidence outside of the Complaint, including the Declaration of Chuck Croft, in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(1).  *See Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.A.R.L.,* 790 F.3d 411, 417 (2d Cir. 2015).

provider. *See id.* ¶ 6.  As set forth on its website, AudioEye continually monitors the relevant

World Wide Web Consortium's WCAG to improve conformance with WCAG guidelines and to

eradicate issues of accessibility that may impede access for persons with disabilities. *See id.*

AudioEye also periodically monitors current law and practice regarding digital accessibility

compliance including, but not limited to the ADA and other similar state and international laws.

*See id.*

AudioEye thereafter provided Defendant with a Sustainable Testing and Remediation

(STAR) Plan, which was implemented to make the Website compliant with WCAG 2.1

Guidelines, and thus ADA complaint.  *Id.* ¶ 7.  Among other things, pursuant to the Plan,

Defendant, with AudioEye, thereafter performed substantial remediation to the Website, e.g.

implementing Accessibility Testing & Remediation Technology and remediation of the Website

to make it WCAG 2.1 compliant.  *Id.* ¶ 8.

Defendant will continue to maintain a managed plan with AudioEye, which will allow

Defendant to ensure that its Website remains complaint with current WCAG Guidelines, and that

the Website will be further remediated to ensure compliance with any new guidelines that may be

established in the future.  *Id.* ¶ 9.  In addition, the managed plan with AudioEye will implement

automatic remediations and give access to a help desk for end users to report accessibility issues

so they can be fixed.  *Id.*  Since Defendant has now engaged AudioEye to make its Website

compliant with WCAG 2.1 Guidelines, Defendant has no reason to undo any of the changes it has

made to the Website.  *Id.* ¶ 10.  Finally, Defendant is committed to ensuring that its Website is up

to date and compliant with all relevant standards and guidelines, including WCAG Guidelines, in

order to allow the Website to be accessible to all, including the blind and visually-impaired. *Id.* P

11.

**LEGAL ARGUMENT**

Courts in the Second Circuit review a facial challenge to a court's jurisdiction under Rule 12(b)(1) using the same standard applied in a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (stating in a case involving "a facial attack to the court's jurisdiction" that to survive a "Rule 12(b)(1) motion to dismiss, [the plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing to sue"). Mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice to survive a motion to dismiss under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678; quoting *Twombly*, 550 U.S. at 570). To survive a motion to dismiss, a complaint must do more than proffer "an unadorned, the defendant unlawfully harmed me accusation." *Id.* at 679. Rather, all conclusory allegations must first be pared from the complaint, and then, the court must review the complaint's remaining allegations to determine whether the well pleaded factual allegations plausibly entitle the plaintiff to relief. *Id.* at 678 79; *see also Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).

The Second Circuit has confirmed that the *Iqbal/Twombly* standard requires that a claim be dismissed unless a court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "Contrary to [the abandoned] 'no set of facts' standard [from *Conley v. Gibson*, 355 U.S. 41 (1957)], which requires only that a complaint not *preclude* the Viability of claims, *Twombly* and *Iqbal* require that a complaint *support* the Viability of its claims by pleading

sufficient nonconclusory factual matter to set forth a claim that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678) (emphases in original).  Reviewing a complaint for plausibility is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 258 (quoting *Iqbal*, 556 U.S. at 679). If a complaint lacks sufficient factual allegations to raise a plaintiff's claims "above the speculative level," the claims must be dismissed as a matter of law. *Id.* at 257 (quoting *Twombly*, 550 U.S. at 555).

## I.   PLAINTIFF'S CLAIMS ARE MOOT BECAUSE DEFENDANT HAS ENGAGED AUDIOEYE TO REMEDY ALL ALLEGED ADA VIOLATIONS.

Immediately upon the inception of this lawsuit, Defendant undertook all necessary steps to ensure that its Website complied with the WCAG 2.1 guidelines applicable to websites of places of public accommodation under Title III of the ADA.  As such, no actual case or controversy exists and the case is moot.  *See* Croft Decl. ¶¶ 3-11.  Because this case is moot, the Court lacks subject matter jurisdiction and must dismiss Plaintiff's Amended Complaint.

A claim shall be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d at 416-17 ("A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it.").  It is the burden of the plaintiff to demonstrate "that subject matter jurisdiction lies over the dispute."  *Diaz v. Kroger Co.*, 18-cv-7953, 2019 WL 2357531, at *2 (S.D.N.Y. Jun. 4, 2019); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements") (citation omitted).

More, "an actual controversy must be extant at all stages of review." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* at 72. "[F]actual changes made by a defendant after litigation has commenced cannot render a case moot unless it is absolutely clear the defendant cannot resume the allegedly offending conduct." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)). However, "[t]he voluntary cessation of allegedly illegal activity may render a case moot 'if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Id.* (quoting *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)).

The matters *Diaz v. Kroger Co.*, 2019 WL 2357531 (S.D.N.Y. Jun. 4, 2019) and *Guglielmo v. Nebraska Furniture Mart, Inc.*, 2020 WL 7480619 (S.D.N.Y. Dec. 18, 2020) are particularly instructive here, as the facts alleged in those lawsuits, and subsequent remedial actions taken by the defendants are extremely similar to those asserted here.

In *Diaz*, the plaintiff, a visually-impaired individual, alleged that the defendant's website was not compliant with WCAG standards and thus violated the ADA. *See Diaz,* 2019 WL 2357531, at *2. In response to the complaint, the defendant submitted an affidavit by which it explained that (i) it had undertaken to comply with the WCAG guidelines, (ii) the affiant personally made sure that all deficiencies in the website (that made it non-compliant) were remedied, (iii) the website was, in fact, now compliant, (iv) it would continue to keep the website compliant and (v) it would to keep the website up to date with any new standards that may be established. *Id.* at *3.

The court found these averments to be sufficiently specific and detailed to meet the showing required to establish mootness and, thus, dismissed the complaint. *Id.* at *5.

In *Guglielmo,* the plaintiff, also a visually-impaired individual, alleged that he visited the website of the defendant, a furniture and appliance retailer, and was unable to make a purchase, also due to the existence of access barriers, in violation of the ADA.  *See Guglielmo,* 2020 WL 7480619, at **1-2.  In response, the defendant also argued that the claim was moot and submitted a declaration stating (i) prior to lawsuit, defendant had invested time and resources in improving the website's accessibility; (ii) the defendant had since remedied each of the ADA violations alleged by the plaintiff; and (iii) the defendant intended to commence a significant redesign of its website, to enhance accessibility. *See id.* at *6.  The Court, citing to *Diaz*, held that the defendant's declaration was sufficient to demonstrate that the claims were moot and dismissed the complaint. *See id.*

Here, like in *Diaz and Guglielmo*, Defendant has submitted evidence via the Croft Decl. by which Defendant has demonstrated that it (i) has engaged a third-party to modify its Website to make it compliant with WCAG 2.1 standards, (ii) will actively update its Website to ensure that it continues to be compliant with WCAG 2.1 standards, and (iii) will make sure to comply with any new standards set forth by the WCAG in the future (or any other similar organization).[3]  *See* Croft Decl. ¶¶ 3-11.  In short, Defendant has demonstrated that its Website is (and will continue to be) complaint with WCAG guidelines; thus, there is no reasonable expectation that any of the

---

[3] While Defendant acknowledges that it retained AudioEye to undertake efforts to remedy any alleged violations after the lawsuit was filed (and not before, like in *Diaz*), the primary focus of the court in *Diaz* was not on when the efforts to remedy *began*, but rather when the efforts and remediation were *completed* (i.e. that the remedies were already complete and not in the process of being completed).  *See Diaz v. Kroger*, 2019 WL 2357531, at *5.

violations Plaintiff alleges Defendant committed will recur in the future.   *See Clear Channel Outdoor*, 594 F.3d at 110.   As such, Plaintiff's claims are moot, and the Amended Complaint should be dismissed with prejudice because the court lacks subject matter jurisdiction over the matter.  *See F.O. v. New York City Dept. of Educ.*, 899 F. Supp. 2d 251, 255 (S.D.N.Y. 2012).

## II.   PLAINTIFF LACKS STANDING TO BRING HER ADA CLAIM (COUNT I)

Even if the Court were to find that somehow Plaintiff's claims are not moot, the Court should dismiss Plaintiff's claims because Plaintiff fails to allege that she has suffered an injury in fact.  *See, e.g., Spokeo, Inc.*, 136 S. Ct. at 1547.  To satisfy Article III's standing requirement, a plaintiff must sufficiently plead that he has "suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision."  *Mendez v. Apple, Inc.*, 2019 WL 2611168, at *1 (S.D.N.Y. Mar. 28, 2019) (internal quotation and citation omitted).   As such, in order to have standing, Plaintiff must plead a "a concrete, particularized, and actual or imminent injury-in-fact." *See id.* at *2.   The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

Here, Plaintiff cannot establish the elements necessary to confer standing because she has not alleged that she suffered an injury-in-fact that is both "concrete" and "particularized."  Indeed, the Complaint lists in only two paragraphs examples of generic alleged access barriers on Defendant's Website, which Plaintiff alleges prevented her from accessing the Website, to wit:

> (a) The screen reader fails the accessibility menu, impeding Plaintiff's ability to navigate the website and make a purchase as a sighted New York customer would.

> (b) The screen reader does not read the title function when a user chooses the particular craft they want to shop for, impeding Plaintiff's ability to make an informed choice as to the craft materials available.

(c) The screen reader does not read the price of various hook and needle kits, impeding Plaintiff's ability to make in informed choice about the items to purchase.

*See* Amend. Compl. ¶¶ 2, 23.

However, Plaintiff fails to identify, among other things, (i) *what* the accessibility menu consisted of, (ii) *how* the screen reader failed to read the accessibility menu, (iii) *how* the purported failure to read the accessibility menu impeded Plaintiff's ability to access information or make a purchase, (iv), *how* and *when* the screen reader failed to read title function when Plaintiff was on the Website, (v) *how* the failure to read the title function of a craft impeded Plaintiff's ability to access specific information or purchase a specific product, (vi) for *what* hook and needle sets does the screen reader not read the price, (vii) *how* the inability to read the price for some "various" unspecified hook and needle kits prevented her from actually making a purchase of a specific product, (viii) *what* actual information Plaintiff was prevented from accessing which prevented her from purchasing a specific product, (ix) *what* specific product/items Plaintiff wanted to purchase but could not as a result of the barriers, and (x) *whether* Plaintiff even actually attempted to purchase a hook and needle set and *how* the barriers prevented her from doing so. *See id.*

More, Plaintiff does not identify a single specific product she intended to obtain information about or purchase on the Website. Rather, Plaintiff alleges generally that "first occurring in July 2021 through March 2022," "Plaintiff encountered multiple access barriers that denied Plaintiff full and equal access to the craft materials, including the [unspecified] hook and needle kits . . . [and] was denied the opportunity to purchase and obtain full enjoyment of the goods and/or services offered on the website." *See id.* ¶ 22. Plaintiff also fails to identify how the purported non-conforming features prevented Plaintiff from actually making a purchase of a specific product. *See id.* ¶¶ 22-23. For example, Plaintiff fails to identify what actual specific content (other than generally alleging that the screen reader failed to read the accessibility menu,

12

does not read the title function for unidentified products, or does not read the price of various, unspecified hook and needle products) she attempted to but was unable to access and how it prevented her from purchasing and/or accessing a specific product.  *See id.* ¶ 23.  Plaintiff also fails to explain how those unidentified, non-conforming features and portions of the Website resulted in an injury to Plaintiff.  *See id.*  Instead, Plaintiff simply alleges generally that she was injured because she "encountered multiple access barriers that denied Plaintiff full and equal access to craft materials, including hook and needle kits, offered to (and made available for) the general public." *See id.* ¶ 22.  But she does not explain *how* she was denied access to specific information she needed to obtain and/or products or *how* she was unable to enjoy the benefits of the Website.  *See id.*

In short, Plaintiff fails to allege one single concrete example of an access barrier on Defendant's Website that prevented her from accessing information regarding a specific product or prevented her from actually making a purchase of a specific product.  Plaintiff also fails to link any of these alleged barriers to any specific injury that Plaintiff purportedly suffered.  Instead, Plaintiff relies on threadbare conclusory allegations that are insufficient to withstand a Fed. R. Civ. P. 12(b)(1) motion. *See*, *e.g.*, *Amidax*, 671 F.3d at 145 46 (holding that a court "need not 'credit a complaint's conclusory statements'" when considering whether a plaintiff has alleged facts sufficient to support standing).

In fact, this Court dismissed similarly deficient complaints for lack of standing in *Mendez v. Apple, Inc.*, 2019 WL 2611168 (S.D.N.Y. Mar. 28, 2019), *Guglielmo,* 2020 WL 7480619, and *Jaquez v. Aqua Carpatica USA, Inc.*, 2021 WL 3727094 (S.D.N.Y. Aug. 20, 2021).  In *Mendez*, the plaintiff alleged that she visited the defendant's website on separate occasions where she encountered four different access barriers, which she alleges prevented her from browsing and

13

purchasing electronics on the website, from accessing information regarding defendant's stores, and from making a service appointment online. *See id.* at *1. The court read plaintiff's complaint as merely alleging that "general and systematic barriers on [the defendant's] website prevented her both from accessing goods and services on the website, as well as accessing goods and services in [the defendant's] physical stores," and found the complaint's threadbare allegations to be lacking in the requisite specificity to allege an injury-in-fact. *See id.* at *2. Specifically, the court explained that the plaintiff failed to (i) provide the date she tried to access the store, (ii) identify what product she was prevented from purchasing, (iii) identify which sections of the website she tried to access but could not, and (iv) which actual barriers prevented her from accessing the defendant's store. *See id.* It thus dismissed the plaintiff's claims. *See id.*

As set forth above, in *Guglielmo,* the plaintiff, also a visually-impaired individual, visited the website of the defendant, a furniture and appliance retailer, to make a purchase of some unidentified product. *See Guglielmo,* 2020 WL 7480619, at **1-2. The plaintiff alleged that he was unable to make a purchase due to barriers he encountered on the website, which he described to a degree as the following: (i) the website lacked certain features and accommodations to aid visually-impaired individuals, (ii) many features lacked "alt. text" code embedded beneath a graphical image to allow the plaintiff to differentiate among products, (iii) features failed to include elements or attributes that enable an individual to identify the purpose of a webpage or determine when content requires input, (iv) many features contained similar title elements that made it difficult to distinguish among webpages, and (v) there existed a number of broken links that hyperlinked to non-existent webpages. *See id.* at *2. However, despite having made some effort to allege some examples of access barriers (unlike in *Diaz*), the Court still found that plaintiff had failed to allege enough specifics to set forth an ADA claim, specifically stating:

But while Plaintiff identifies certain barriers, he does not allege where exactly on the Website he encountered these barriers, aside from noting that the lack of embedded "alt. text" code was particularly an issue on an unspecified section of the Website where he unsuccessfully attempted to make a purchase. Further, Plaintiff does not identify the goods that he intended to purchase on any of his visits to the Website, nor does he specify the dates of any visits. Courts in this Circuit have required far more from plaintiffs bringing ADA claims.

*See id.* (internal citation omitted).

In *Jaquez*, the plaintiff, another visually-impaired individual, alleged that he attempted to access the defendant's website with the intent of browsing and potentially making a purchase of some unidentified product, but was unable to do so because of the existence of certain access barriers on the website.  2021 WL 3727094, at *1.  The defendant moved to dismiss, arguing that Plaintiff lacked standing because Plaintiff failed to explain (i) how the purported access barriers prevented Plaintiff from accessing the website; (ii) the important information that he was denied access to complete a purchase; (iii) the product that he intended to purchase; and (iv) how inaccessible nutritional information of the products on the website prevented Plaintiff from making a purchase.  *Id.* at *4.  The Court agreed with the defendant and dismissed Plaintiff's Complaint; specifically noting that "Plaintiff could not articulate the product that he intended to purchase on Defendant's website" and reiterating that "[i]t is not sufficient to claim that [plaintiff] suffered an injury in fact by casually going on the website with the intent of browsing and potentially purchasing a product without identifying the product that [plaintiff] was prevented from purchasing." *Id. (citing Guglielmo,* 2020 U.S. Dist. LEXIS 238707, at *11).

This is the case here.  Like in *Mendez*, *Guglielmo*, and *Jaquez*, Plaintiff fails to allege (i) what specific product Plaintiff intended to purchase (other than a vague reference to some hook and needle kit), but could not due to a specific barrier, (ii) what specific sections of the Website she was prevented from accessing, which she needed to access in order to make a purchase of s

specific product, or (iii) how the alleged barriers actually prevented her from accessing information she needed and/or sought or from purchasing a specific product from the Website.  *See Mendez*, 2019 WL 2611168; *Guglielmo,* 2020 WL 7480619; *Jaquez*, 2021 WL 3727094.  And, like in *Mendez*, *Guglielmo*, and *Jaquez,* in failing to allege these specific facts and instead relying only on conclusory allegations that she observed and encountered general barriers, Plaintiff has failed to establish Article III standing necessary for all of his claims.  *See id; see also Harty v. Nyack Motor Hotel, Inc.*, 2020 WL 1140783, at *4 (S.D.N.Y. Mar. 9, 2020) (dismissing ADA complaint where plaintiff "fail[ed] to describe any purportedly deficient features, how they impeded his navigation of the Website, or what, if anything, he was able to observe when he did attempt to access the Website."); *Feltzin v. Stone Equities, LLC*, 2018 WL 1115135, at *10 (E.D.N.Y. Feb. 8, 2018) (recommending the district court grant a judgment on the pleadings in a Title III ADA case, noting that "although Plaintiff lists thirteen alleged ADA Violations . . . conspicuously absent [from the complaint] are facts explaining *how* Plaintiff interacted with and experienced Violations" and concluding that "[the plaintiff's] conclusory allegation that '[the plaintiff] has personally observed or encountered' these violations . . . is insufficient to connect the violations to Plaintiff's experience of them for purposes of establishing a concrete and particularized injury in fact.") (emphasis in original); *Feltzin v. Triangle Props. #1, LLC*, 2016 WL 11599264, at *5 (E.D.N.Y. Dec. 15, 2016) ("Plaintiff provides no additional information concerning either the[] alleged encounters or any resulting injuries.  In fact, Plaintiff provides no details at all concerning any instance in which he allegedly encountered a violation.").

Because Plaintiff has failed to allege an actual injury, the Court does not have subject matter jurisdiction over Plaintiff's claims and the Court must dismiss the Amended Complaint.

### III.   PLAINTIFF ALSO LACKS STANDING TO BRING HER NYCHRL CLAIM BECAUSE SHE FAILS TO PROPERLY PLEAD AN INJURY IN FACT (COUNT II)

For the reasons stated above, because the same legal standards governing standing under the ADA apply to the NYCHRL, Plaintiff's remaining claims also fail and the Court should dismiss the Amended Complaint in its entirety, with prejudice.  *See Kreisler v. Humane Soc'y of New York*, 2018 WL 4778914, at *6, *8 & n.5 (S.D.N.Y. Oct. 3, 2018) (granting dismissal with respect to alleged ADA Violations on the basis that the issue was moot, and concluding, "[f]or the same reasons," that the plaintiff "also lack[ed] standing to challenge the restroom and water fountain under the NYCHRL") (citation omitted).

### IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR VARIOUS FORMS OF RELIEF UNDER THE NYCHRL.

Should the Court find that Plaintiff has standing (as set forth above, he has not), the Court should dismiss Plaintiff's Amended Complaint, in part, because Plaintiff has failed to state a claim for several forms of relief under the NYCHRL.

Civil penalties are not recoverable by individual plaintiffs under the NYCHRL.  *See* N.Y.C. Admin. Code, tit. 8, Ch. 1, § 8-127(a) ("Any civil penalties recovered pursuant to this chapter shall be paid into the general fund of the city.").  More, to be awarded punitive damages under the NYCHRL, the defendant must have "engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" *Chauca v. Abraham*, 89 N.E.3d 475, 481 (N.Y. 20017).  Here, Plaintiff has failed to allege any facts whatsoever to support her wholly conclusory allegation that Defendant's actions were somehow "willful intentional discrimination."  *See* Amend. Compl. ¶ 51.  As such, Plaintiff has utterly failed to allege any conduct that could arise to an award of punitive damages under the NYCHRL.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the

Amended Complaint with prejudice.

Dated: New York, New York
       June 13, 2022                     **KRANJAC TRIPODI & PARTNERS LLP**

                                   By: <u>s/ Xavier M. Bailliard</u>
                                      Xavier M. Bailliard
                                      xbailliard@ktpllp.com
                                      30 Wall Street, 12th Floor
                                      New York, NY 10005
                                      Tel: (646) 216-2400
                                      Fax: (646) 216-2373

                                      *Attorneys for Defendant*